On behalf of the Puerto Rico Industrial Development Company, I would like to request reserving Mr. Munoz, Attorney Munoz, I will give you the two minutes, but before you start this oral argument, we will not hear from you during oral argument the sort of intemperate, conspiratorial, offensive statements you made in your brief. You will deal with the legal issues and you will deal with the facts of record. Am I clear? Yes, Your Honor. Proceed. Good morning. This is a response of recovery cost action brought by the United States of America against the Puerto Rico's Development Industrial Company under Section 107A of CERPA. The Comprehensive Environmental Recovery Compensation and Liability Act. We understand that the major mistake of this report was that as part of the prima facie analysis, it inserted the causation analysis of the Section B, 107B, that dealt with the affirmative defenses. We understand that because the United States does not have the evidence to establish the release argument, which is the third, one of the arguments of the prima facie case, that the case should be dismissed. It is notable that in this case, the United States has had several and different theories to prove the release. Counsel, please. There are contaminated groundwater plumes under your client's property. Your client is the owner of the property. There is no dispute that TCE and its byproduct, both contaminants, are in that groundwater. Why is that not adequate to show release? Your Honor, because I understand that the case law, this is an extraordinary case in a setting because it's the only one where the release would be proven merely by having groundwater contamination by itself. But, Counsel, you don't have merely groundwater contamination by itself. You also have proof that the drinking water well that serves PRASA has been contaminated by this contamination. So, you've got the contamination on a facility and its release into the environment through its release into the groundwater well. That seems to me to be the government's prima facie case. Well, Your Honor, if you look at the motion for summary judgment of the government, first, they have made a concession that they are not going to use the tropical conditions of Puerto Rico as an explanation. I'm not talking about subtropical conditions. I'm talking about contamination on your property and that contamination winds up in PRASA's drinking water well. It seems to me that's the prima facie case. Your Honor, what we disagree is the fact that if the government's position is accepted, then every owner of a contaminated aquifer, regardless of where the contamination came from, would be liable. I think that's exactly what CERCLA does, unless you can come within an exception, such as the continuous property exception. Your Honor, I understand and I do cite the EPA policy in my brief about the owners of contaminated aquifers. They have contamination under the property that has come from CERCLA's migration. They're not going to be prosecuted and held liable. Counsel, let's go back to the language of the statute. There is a release. Your argument seems to be, oh, we're not responsible for the release. The government hasn't proven. We are the ones who, as owners of the property, are responsible for whatever contaminants there are on the groundwater. You say you have an expert who pointed to some possible off-site source. That is the contiguous property exception. That, however, you have the burden of proof on. The government does not. But you have litigated this case as though you don't have that burden of proof. It's the government's burden to prove that it is not the other source. Why didn't you and your client spend money on following up on your expert if you really thought there was an off-site source? Your Honor, despite that the district court did not allow us to complete the expert discovery, in this case... ...you and your clients have the burden of showing the other sources. And yet, you chose not to do that. Your Honor, I understand that the case needs to be analyzed in a different way. And I understand that before the district court has the burden of establishing the affirmative defense, the United States must satisfy the prima facie case. And it has four elements. I understand your challenge to be restricted only to the element of release. That is correct. Okay, so state your argument succinctly as to why you think there is no release. Your Honor, because it's really remarkable that the United States posited that the tropical conditions would justify it or mere presence. Right now on the pier... ...and the groundwater plume, it's well documented, it's contaminated and is on your client's property. Your Honor, because the allegation of the United States is that there was leaching of hazardous substances into the groundwater. I'm sorry, you seem to think that there is no release of contaminants because it wasn't found in the soil. Is that it? That is correct, Your Honor. And if you look, for example, at the Gould case... Why does that matter? It matters because you need to know where the groundwater contamination came from. No, why do you need to know that? That is your defense. Your Honor, there is no path of contamination from my property to the groundwater. But counsel, what you have to focus on is that is relevant only to your continuous property exception. And that's an exception as to which you have the burden. Your Honor, before we go into the affirmative defenses, if only, if the only thing that needs to be... If groundwater contamination by itself, without any trace whatsoever of contamination in the soil, is sufficient to prove the release element... Groundwater contamination together with contamination of the environment... In other words, part of the government's prima facie case was to show that the drinking water well was contaminated. Yes, Your Honor, but they don't have a source. And it is important, if you look at the cover page of our brief, we cite one of the CFRs, which says that the government needs, at all stages of the response, they need to keep documentation as to the source and the circumstances. At the public meeting, when they were discussing with the public what they were going to do, they admitted, I mean, it is... Okay, let me see if I have this. You say the CFRs require that we read the statute differently to say that the presence of groundwater, which has migrated and contaminated public drinking water wells, is not enough, unless the government also shows that it is in the soil. Even though these are highly volatile organic chemicals. Your Honor... Isn't that your position? Yes, it is. It is. And I understand that that's why Section 107A4 speaks of a release from which the contamination emanated. And that's why it could be an up-gradient source that just went through... Then why did Congress put the burden on people in your position to identify up-gradient sources? The way you read it, that defense basically gets written out of the statute because it's the United States' burden. Your Honor, I think the opposite would happen. If the plaintiff need not identify the source, how can a defendant on an affirmative defense establish that a non-existent source was the sole cause of the contamination? I'm sorry. I'm sorry. Wait a minute. You just lost me. You had an expert who said there may be an up-gradient source. You decided not to pursue that. If you had pursued that and shown up-gradient, you might have had some allocation of the costs of the remediation argument. Are we agreed thus far? Your Honor, by the time the motion for summary judgment on liability was filed by the United States, they were still conducting tests, and everyone came out empty. There was no contamination on the soil. And the allegation, the only allegation and modality of release in this case is leaching, and leaching does not occur from the bottom to the top. It's the other way around. The case of Gould with the district court science says it. There was on both, and there was a trace of leaching. There's no trace in this case. Our expert, Dr. Banaschak, I cited in the brief. He says, that's why you look so hard for that trace, because once you find it, that's the end of the question. Okay, are you asserting that your expert established as a matter of science that if there are no present traces of TCE and other volatile organic chemicals in the immediate soil, but there is a groundwater plume underneath, that necessarily that means that the contaminants in the groundwater did not originate from some past operation on your property? I didn't think your expert said that. The answer to that question is yes, but you also have to take into consideration that the United States did not present any expert evidence to explain how the contamination got there. Not who caused it, because we're not looking, it's part of the thing. I'm sorry, where in the statute does it say if there is a release, you have to explain how it got there, if you're the United States? The plaintiff, at section 107A4, it says that you need to have a release, establish a release from which the contamination emanated. There's no doubt that there's contamination, and there's no doubt that... That's a different issue than how it occurred, from which it occurred? It could come from an up-gradient source that no more investigation was conducted by the EPA. When they were going to close the record of decision, there were two letters from critical attorneys requesting the EPA not to close it and conduct further investigation, because there was no source identified. Okay, thank you. You have your rebuttal time. Thank you, Mr. Gonzales-Munoz. Please mute your audio and your video at this time. Attorney Durkee, if you would please introduce yourself on the record to begin. Good morning, I'm Ellen Durkee with the U.S. Department of Justice for the United States. The district court's amendment judgment holding defendant Pritko liable and ordering Pritko to reimburse the United States for past response costs should be affirmed. On appeal, Pritko primarily objects to the liability determination on two grounds. The framework of the liability that Congress designed in CERCLA is really the important context here. CERCLA allows EPA to come in and clean up a site in order to make sure it's cleaned up quickly, and then to seek recovery from responsible parties. Subject only to limited defenses and exceptions. The relevant category here is A1, which is the current owner of a facility from which there is a threat and release of a hazardous substance. Procedurally, once the prima facie case is established by the United States, then the defenses, such as the contiguous property defense, which posits that all the cause of contamination is from an upgrading property in this case. It says expressly that the burden of proof is on the party that's invoking that defense. Excuse me, let me ask you a question. I thought I read in my preparation here an expert retained by the defense, by Pritko, who said that the likely source of this contamination was the so-called Navarro property. Yes. Why isn't that enough on summary judgment? Likely means to me more likely than not. We're on summary judgment where all inferences are drawn favorably to the non-moving. Why isn't that enough to create a triable issue of fact as to the source of the contamination and as to whether or not the contiguous property exception has application? Well, I'm going to have three points to make here. At summary judgment, the party that has the burden of proof has to come forward with evidence that would establish the elements or the criteria for this defense. First of all, with respect to whether there was a release on the Navarro property, saying I think it's a likely source really isn't the kind of evidence to prove that. The data does not back that up. The data shows that the contamination is under the Pritko property. The second reason that they did not adduce enough evidence that they were required to do at the summary judgment phase is that they have two other things they have to show. One is that they have to show that they did not cause it. In other words, this other property was the sole cause of it. And they have to show that the person that's responsible for the hypothetical release on Navarro property is not related to them. Which means they have to identify who that person is, which they did not do. You're saying that on the second and third element at least there's no evidence in the record to create a triable issue? Correct. Any failure on any of those three areas means that you shouldn't go forward with the summary judgment because they don't have proof on one of the essential criteria. Okay, but going back to the first criteria, I understood you to say that isn't enough either to obviate the government's burden, the government's showing of release. You say this is a theory put in terms of likelihood and that when you examine the data it is inconsistent with the theory so they needed to do more. Have I got your argument? Well, that's only with respect to their burden of proof on the contiguous property defense. Okay. Now, in terms of, you know... Judge Selye's question to you about summary judgment included both release and contiguous property. So, would you go back please and talk about the release? Okay, I'm sorry, I understood the question to be about... Yes, you misunderstood it. Answer the question please. Okay, there was a release, the presence of this contaminated groundwater on Fritco property is evidence of a release. A release is, the function that it has among the elements is to show that hazardous substances are in the environment. It does not have to be in every medium of the environment, only one suffices and groundwater is one of the listed medium in the definition of environment. It does not require it to be soil and the groundwater. And so, courts routinely use the circumstantial evidence that if you have contamination on a property, that is evidence that there was a release. That is, hazardous substances went from being in some kind of containment to being in the environment. And I think the added point here is that under the current owner standard, it's the only one of the four categories of responsible parties that does not require disposal. It only requires a release and a release includes passive migration. And there is undisputed evidence that the contaminated groundwater moves in a south to southwest direction gradient toward the adjacent drinking water supply well, which is used to provide tap water to 14,000 residents and that the plume went to that well. And so, that's the evidence of a release. And you also have, in the totality of circumstances mentioned, this is an industrial property. It's been an industrial property for almost 50 years. It has had tenants on it that are engaged in manufacturing. This is not some kind of, and the Navarre property has historically always been agricultural. So, I mean this, especially in the circumstance, in the totality of circumstances, this is sufficient evidence, undisputed evidence of a release. But with respect to the contiguous property exception, I'm still not sure. I agree that there may be a problem on the second and third elements of that exception. But on the first element, it seems to me the testimony that it's a likely source of the expert testimony. That the Navarre property is a likely source of the contamination would probably be enough on summary judgment to get past that element. But you're telling me there's nothing in the record that shows whether or not there's any affiliation or ever has been between the Navarre property owners from time to time and the Prudco property? Nor is there anything that speaks to the issue of sole cause? Right, or it's not sufficient to demonstrate that. So, on the sole cause, you have to show that it's not just saying that, well, maybe we don't have an affiliation with a property owner. But causation then introduces the idea that you have to show who caused that release on that other property. And that's not something that they've provided because you'd have to have some identification of a person in order to know whether they were affiliated or not. Even if you say it's a likely source, that doesn't necessarily rule out the sole source. Because, you know, typically in a surplus site, a Superfund site, which is, you know, the most, you know, sort of contaminated sites that get on the Superfund list. I mean, it's often that you may have multiple sources and multiple releases and continuing releases. And courts have never required, as part of the prima facie case, to go back and fingerprint that, you know, this came from that exact pinpoint spot. And, you know, instead, courts do rely on this kind of, you know, common sense, straightforward application of release. I mean, the term release is not a proof of, you know, it's not supposed to be some magical requirement, you know. On the third issue, which is the remedy chosen and the sum, I take it your position is that if they had wanted to produce sufficient evidence that there were other sources, they have had their chance and they simply didn't do that. So, there's nothing wrong with assigning them the remediation costs. I guess I just want to clarify. At issue in this appeal is only the question of past costs, which were not remedial costs. Yes. Right, the removal costs. Okay, sorry. So, my point is that you don't, it wouldn't change, you know, even if we, you know, litigated about whether the remedial costs are consistent or inconsistent with the National Tendency Plan, that doesn't change this judgment because this judgment is an awarding cost for that. It did say that they were, that the liability determination has been made and that comes directly from a provision in CERFLA that allows a declaratory judgment about liability. But if and when the United States seeks to recover costs incurred for remediation, the remedial air sparging remedy, that is the point in time when they can put into evidence that, you know, they think it's arbitrary and capricious and inconsistent with the National Tendency Plan. It's just not presented here and it wouldn't change the judgment here. Okay. I mean, I will add, too, that it, that, you know, we are very adamant and sure about the argument that they can go outside of the administrative record because the statute is pretty plain that you have, that it's limited to the administrative. Can I just ask, what, what were the removal mechanisms that drove the removal costs? Well, removal is defined under CERFLA to include all investigation tasks. So, this is part of this whole process of, it's all the sampling, it's the reports, it's the, you know, the, yeah, basically those are the major things. But then also included in CERFLA are things like, you know, prejudgment interest, the cost of litigation, all of that has been well established that those are part of what can be recovered in the cost recovery action. But has there been any kind of digging up of the contaminated soil and, sorry, digging up of where the groundwater plumes are or any, anything like that? Yes. Since, since this case was briefed, I think I put in our brief, this is not in the record, obviously, because it was post judgment, but they had started construction of this, it's called an air sparging remedy. And they have, since we briefed it, they have completed it. And so, the remedy, what they don't dig things up per se, what they do is they, and I'm not a technological person, so broad brush, is they bring up the, these are volatile organic compounds. So, when they hit the air, they put in air and that causes it to, you know, the contamination to disappear. And so, it's a very well known remedy for groundwater. So, you don't have to dig it up. You don't have to pump it out. Okay. You accelerate. But the remediation isn't part of this appeal. Correct. Okay. Only removal. Okay. Okay. Yes. Okay. Anything else you'd like to add? No, I think that we've covered the issues that I had planned to talk about. So, thank you very much. Thank you. At this time, Attorney Durkee, please mute your audio and video. And, Attorney Gonzales-Munoz, you may begin your two-minute rebuttal by reintroducing yourself. Yes, Attorney Gonzales-Munoz. First, I would like to say that the National Contingency Plan requires the lead agency to identify the source of the release. That is Appendix E of Part 300, which is the National Contingency Plan. The other thing, if we look at the docket number 163, which is the second opinion and order by the court, there's 11, where the court goes into the details as to the different evidence that is in the case, as to the way in which the release happened. And it mentions Al Medin, that he is the EPA expert, and he was coming to establish that the release happened as a result of volatilization and percolation. The United States has conceded that that was not their theory in the motion for summary judgment. Counsel, aren't those arguments, in a way, going to the remedial costs and who should be allocated the costs, as opposed to the release and removal costs issue? I don't know. No, but it goes to the fact that if the United States or the plaintiff, if it's part of the plaintiff, is relieved of the burden of establishing the release element in the prima facie case... groundwater in the environment, and if there are contaminants there, that is a release. They do not concomitantly have to show it's in the soil. I don't understand the arguments you're now making to go to that argument. Do you have anything that goes to that argument? Your Honor, yes, I would like to say that there's not one opinion that has held that groundwater contamination by itself constitutes a release. And they have cited three opinions. City of Wichita, Partition... I'm sorry, why does that matter? Whether or not other courts have said that, if the statute says that you don't need it in all elements, you don't need contamination in all elements, only in the groundwater, why doesn't the statute just speak for itself? I think that if the decision stands as it is, it would be amending CERCLA in the fact that it would be eliminating a plaintiff's prima facie burden of establishing the source of contamination. So your argument goes to the allocation of the burdens? Yes, Your Honor, I think that... Okay, do you have anything else? Do you have anything else? No, Your Honor. Okay, thank you. Thank you at this time. Attorney Gonzales-Munoz and Attorney Durkee may leave the meeting.